IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

UNITED STATES OF AMERICA, )
                          )
        Plaintiff,        )
                          )
vs.                       )  2:23-CR-00069-Z-BR-5
                          )
RACHEL LYNN WADDELL,      )
                          )
        Defendant.        )

SENTENCING HEARING
BEFORE THE HONORABLE MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE
AUGUST 29, 2024

A P P E A R A N C E S

For the Government:

    UNITED STATES ATTORNEY'S OFFICE
    500 South Taylor - Suite 300
    Amarillo, TX  79101
    806/324-2397
    Email: anna.bell@usdoj.gov
    BY:  ANNA MARIE BELL

For the Defendant:

    BARFIELD LAW FIRM, PC
    P.O. Box 308
    4200 I-40 West Suite 200A
    Amarillo, TX 79105-0308
    806/468-9500
    Email: barfieldlawfirm@gmail.com
    BY:  W. BROOKS BARFIELD, JR.

COURT REPORTER:  SHAWNIE ARCHULETA, TX CCR No. 7533
                 1100 Commerce Street
                 Dallas, Texas 75242

proceedings reported by mechanical stenography,
transcript produced by computer.

(In open court at 3:00 p.m.)

THE COURT:  The Court calls Criminal Action 2:23-CR-069-Z-BR-5, United States of America versus Rachel Waddell for the sentencing.

Are the parties ready to proceed?

MS. BELL:  United States is ready, Your Honor.

MR. BARFIELD:  Brooks Barfield appearing for Rachel L. Waddell.  We are ready to proceed with sentencing, Your Honor.

THE COURT:  Counsel for the United States is present.  Counsel for the defendant, Rachel Lynn Waddell is present.

Ms. Waddell, please state your presence in court today by stating your full name for the hearing.

THE DEFENDANT:  Rachel Lynn Waddell.

THE COURT:  Ms. Waddell, you may participate in this hearing either seated or standing, whatever is consistent with the advice of counsel.

You appeared in this court for a criminal trial beginning on April 23rd, 2024.  During that same week, on April 25th, 2024, you were convicted by a jury of your peers on one count of conspiracy

to distribute and possess with intent to distribute Fentanyl, a violation of 21 U.S.C. Section 846.

Now, Ms. Bell, did the government receive a timely copy of the presentence report?

MS. BELL:  Yes, Your Honor.

THE COURT:  Other than the written responses and Documents 403 and 434, does the government have any additional information, response, objection or clarification to the PSR?

MS. BELL:  No, Your Honor.

THE COURT:  Does the government adopt the facts and conclusions set forth in the PSR as modified by the addendum?

MS. BELL:  Yes, Your Honor.

THE COURT:  Now, Mr. Barfield, did you and your client received advance copies of the PSR and any addenda thereto?

MR. BARFIELD:  We did, Your Honor.

THE COURT:  Did you have a full and complete opportunity to review the PSR and the addendum with your client?

MR. BARFIELD:  Yes, Your Honor.

THE COURT:  Did you explain to your client how the PSR and addendum worked in the sentencing process?

MR. BARFIELD:  Yes, Your Honor.

THE COURT:  Are you confident that your client understands every word, paragraph and line of the PSR as modified by the addendum?

MR. BARFIELD:  I am, Your Honor.

THE COURT:  Here defendant did timely file written objections to the PSR, and some are addressed by the addendum.

Does the defendant continue to urge her objections to the PSR?

MR. BARFIELD:  Yes, Your Honor.

THE COURT:  Okay.  So the Court will take up those objections in turn.

Here the Court is considering defendant's written objections in Document Number 431, alongside the government's written response in Document 434 and the addendum that followed.

The Court will announce its tentative finding and then invite any knowing cumulative argument responsive to that tentative finding.  And at all times, both defendant and the government will be provided an adequate opportunity to present information responsive to the Court's tentative finding as long as it is not cumulative of information submitted in written form to the Court.

First, regarding drug quantity.  And this is specific to Defendant's Written Objection Number 1 to the drug quantities attributed to defendant as relevant conduct and corresponding to PSR Paragraph 29.

The Court has tentatively determined as follows:

A sentencing court may properly approximate your quantities when calculating relevant conduct when narcotics recovered in a drug seizure do not reflect the full scale of the actual offense conduct.  This is stated in Guidelines Section 2D1.1, Comment Note 5.

The Court may do so by extrapolating, quote, from any information that has sufficient indicia of reliability to support its probable accuracy.  That is a quote from *United States v. Barfield,* 941 F.3d 757, a 5th Circuit case from 2019, citing other cases holding same.

It's also reflected in *United States v. Nava*, 624 F.3d 226, finding that admissions by a defendant do typically bear sufficient indicia of reliability for purposes of sentencing.

Here defendant admitted that she distributed approximately 5,000 Fentanyl pills.

This is reflected in PSR Paragraph 24.

While defendant argues that the PillEye photographs lack sufficient indicia of reliability, the PSR, instead, attributed 800 pills from that application, and those were corroborated by her codefendant.  This is reflected in PSR Paragraph 16 and 29.

The defendant claims there was no evidence at trial that the pills in the photograph were illegal narcotics.  Codefendant T Blue Bloomer informed officers that he photographed and counted these 800 pills using the PillEye app after defendant left them with him hours before her arrest.  So here the Court is referencing PSR Paragraph 16 and 29.

The Court finds that the 800 pills documented in the PillEye app on October 3rd, 2023, and corroborated by Codefendant Bloomer shortly thereafter do bear sufficient indicia of reliability to support their probable accuracy and may be used by a sentencing court to determine relevant conduct.

Also, consistent with the Fifth Circuit's recent opinion in *United States v. Rudolph*, 103 F.4th 356, this Court separately finds that PSR Paragraphs 16, 24 and 29, hearing adequate

evidentiary basis with sufficient indicia of reliability and that defendant has not presented rebuttal evidence sufficient to demonstrate that the PSR paragraphs are unreliable, additionally and separately this Court presided over the defendant's criminal trial and thereby observed the witnesses and evidence underlying the aforementioned PSR paragraphs and does separately find them to be reliably consistent with the *Rudolph* opinion.

The Court finds that these drug quantities were trafficked as a part of a series of drug trafficking offenses that were all part of a common scheme or course of conduct sufficient to be encompassed as relevant conduct.

The Court is guided by *United States v. Nava*, 957 F.3d 581, *United States v. Rhine,* R-H-I-N-E, and *United States v. Alaniz,* A-L-A-N-I-Z, 726 F.3d 586.

If anything, it is likely that the PSR significantly undercounts defendant's relevant conduct because the PillEye app on the defendant's phone documented a total pill count of 35,490 pills as of August 27, 2023.  Again, this is reflected in PSR Paragraph 16.

Again, the PSR only accounts for those

pills admitted to have been trafficked by defendant or corroborated by her codefendant, so this represents a conservative estimate.

For all these reasons and reasons set forth in the addendum, the Court overrules defendant's objection.

Mr. Barfield, does defense counsel have any additional argument that would not be cumulative?

MR. BARFIELD:  Any additional argument would, in fact, be cumulative, Your Honor.

THE COURT:  Okay.  Any additional argument from the government?

MS. BELL:  No, Your Honor.

THE COURT:  The Court hereby adopts its tentative finding as its final finding and adopts the findings and conclusions of PSR Paragraph 29 and the relevant addendum paragraphs in their entirety.

Also in the category of a drug quantity objection, Defendant's Written Objection Number 2 to the application of the two-level adjustment for possession of a dangerous weapon corresponds to PSR Paragraph 39 and Guideline Section 2D1.1.  The Court tentatively determines as follows:

In light of the Guideline Section 1B1.3,

Application Note 11(a) to Section 2D1.1(b)(1), the 5th Circuit jurisprudence on the application of Section 2D1.1(b)(1) and the following fact-based determination, the Court overrules the defendant's objection.

The relevant conduct Guidelines Section 1B1.3(a)(1)(A) state that specific offense characteristics shall be determined on the basis of all acts and omissions committed by defendant.

Application Note 11(a) to Section 2D1.1 states that the two-level enhancement, quote, should be applied if the weapon was present unless it is clearly improbable that the weapon was connected to the offense.

The government must prove by a preponderance of the evidence that the weapon was present thus showing a temporal and spatial relation between the weapon, the drug trafficking activity and the defendant.

This is a summary from *United States v. Lee*, 966 F.3d 310, a 5th Circuit case from 2020.  If the government meets its burden, defendant can still avoid the enhancement, thus showing the nexus between the weapon and the offense as clearly improbable.

That combined weight of authority from guidelines section to application note to 5th Circuit case law consistently holds that Section 2D1.1(b)(1) enhancement may be applied where the government's provided evidence that the weapon was found in the same location where drugs or drug paraphernalia are stored or are a part of the transaction that occurred.  That's a direct quote from *United States v. Zapata-Lara*, 615 F.3d 388.

Here the Court finds that the government has met its burden by proving by a preponderance of the evidence that the dangerous weapon was present and by showing a temporal and spatial relation between defendant's firearm, defendant's drug trafficking activity and defendant herself.

Relevant here, the firearm in question was recovered when law enforcement executed a search warrant on August 28, 2023, at defendant's residence that she shared with Codefendant Bloomer.  This is reflected in PSR Paragraph 20.

Law enforcement recovered a loaded .45 caliber handgun from underneath the mattress in defendant's bedroom in addition to three loaded magazines.  This, too, is reflected in PSR Paragraph 20.

Law enforcement also located two Fentanyl pills on the nightstand next to defendant's mattress.  This is documented in government's filing in ECF 434 at pages 10 through 11.

Additionally, defendant possessed thousands of Fentanyl pills at this same residence, as documented by the photos in the PillEye app. This, too, is reflected in Document Number 434.

The defendant did not object to PSR paragraph 20 and its description of the close proximity in which the narcotics and firearms were recovered by law enforcement.

And based on these aforementioned facts and authority, the Court finds the defendant has not presented evidence sufficient to show that the nexus between the firearm and the drug trafficking offense is clearly improbable.

Having not met that standard, the Court overrules defendant's objection.

Does defense counsel have any additional argument that would not be cumulative?

MR. BARFIELD:  No, Your Honor.

THE COURT:  Does the government?

THE MS. BELL:  No, Your Honor.

THE COURT:  The Court hereby adopts the

tentative finding as its final finding, and thereby adopts the findings and conclusions set forth in PSR Paragraph 39 alongside the relevant addendum paragraphs.

Now, next, regarding Defendant's Objection Number 3 to PSR Paragraph 42, which applies a leadership role enhancement under the guidelines, the Court tentatively finds as follows:

In accord with factors listed at Application Note 2 to Guideline Section 3B1.1 and the following fact-based determination, the Court overrules the defendant's objection.

Section 3B1.1(c) states, quote:  If the defendant was an organizer, leader, manager or supervisor in any criminal activity other than described in (a) or (b) increased by two levels.

Application Note 2 further explains that to qualify for an adjustment that the defendant must have been the organizer, leader, manager or supervisor of one or more participants.

Here the PSR reflects -- and testimony at trial reflects -- that defendant's role in the drug trafficking organization rose to at least the level of manager or supervisor, sufficient to qualify for the two-level increase.

Defendant admitted that she directed Codefendant Bloomer to sell Fentanyl on her behalf. That is reflected in PSR Paragraph 27.  Defendant also sent numerous text messages to Bloomer detailing the number of pills he should sell and what price he should charge per pill.  This is reflected in Government's Document Number 434 at page 15 and also Exhibits 73 and 76 attached thereto.

Combined the sentence demonstrates that the defendant's role in the drug trafficking organization rose to at least the level of manager or supervisor sufficient to qualify for the two-level increase under Section 3B1.1(c), even if it does not qualify for additional levels for organizer leader.

For these reasons, the Court has elected to overrule defendant's objection to the application of the two-level increase in PSR Paragraph 42 and consistent with Guideline Section 3B1.1(c).

Does defendant have any objection to this tentative determination that would not be cumulative?

MR. BARFIELD:  No, Your Honor.

THE COURT:  And any objection or argument

that would not be cumulative from the government?

MS. BELL:  No, Your Honor.

THE COURT:  The Court adopts its tentative finding as its final finding and hereby adopts the findings and conclusions set forth in PSR Paragraph 42, alongside the relative addendum paragraphs.

Now, I know that was a lengthy set of objections and adjudications.

Does defendant have any untimely objections, responses or requested clarifications?

MR. BARFIELD:  No, Your Honor.

THE COURT:  Does the government?

MS. BELL:  No, Your Honor.

THE COURT:  Okay.  So let's -- well, first, having ruled on defendant's objections and stated its reasons on the record, the Court hereby adopts the remaining findings and conclusions of the presentence report and addendum in their entirety.

The Court will now determine the appropriate guideline calculations pursuant to federal statutes and the 2023 Guidelines Manual. But before doing so, the Court will note the considerable impact of statutory maximums on this case.

Here the statutorily maximum sentence is

20 years or 240 months.  The statutorily authorized maximum fine is up to a million dollars.  Notably, here, because defendant is in offense level 36 and criminal history category IV, defendant could have faced an advisory guideline range of 292 up to 365 months but for statutory maximums that the Court referenced.

Having considered probation officer's calculations and conclusions in the PSR and addendum and now having ruled on it and its objections thereto, the Court determines that the correct advisory guidelines range is as follows:  A total offense level of 36; a criminal history category of V; an imprisonment range of 240 months; and a supervised release range of 30 years -- I'm sorry, three years, so -- strike that.  Here the maximum supervised release range is three years; a fine range of 40,000 up to $1 million; and restitution is not applicable.

Does defendant have any objections to the Court's calculation of the advisory guidelines range?

MR. BARFIELD:  No objection.

THE COURT:  Any objection from the government?

MS. BELL:  No objection, Your Honor.

THE COURT:  The Court will apply that advisory guidelines range.

Total offense level 36, criminal history category V, imprisonment range 240 months, supervised release range three years, fine range 40,000 up to $1 million, restitution not applicable.

So let's turn to statements, arguments and allocution, in that order.

Ms. Bell, did the government comply with any and all victim reporting requirements.

MS. BELL:  Yes, Your Honor.

THE COURT:  Does the government intend to submit impact statements?

MS. BELL:  No, Your Honor.

THE COURT:  Mr. Barfield, Court reviewed and will give appropriate weight to character statements from the following persons:  Phillip Stanley, Josh Fields, and Teresa Tubbs.

The latter two are identified as defendant's brother and sister.  Those were received by the Court, and the Court will give them appropriate weight.

Do you intend to present these or other character statements through live testimony?

MR. BARFIELD:  No, Your Honor.

THE COURT:  Okay.  So let's turn to arguments.  Here the Court does intend to sentence at the advisory guidelines range.  That is without prejudice of either party arguing or variance or departure therefrom.

If you are arguing for variance, please use the 3553 factors as your guidepost.  And if you are arguing for a departure, please identify to the Court any guidelines sections that apply.

With that, Ms. Bell, you may proceed.

MS. BELL:  Thank you, Your Honor.

Your Honor, the government requests a sentence at the guideline range of 240 months.

Your Honor, the defendant has 20 adult convictions.  The majority of those stem from when she was in her 30s.  And so it isn't the case where we see often where someone has convictions when they are young and then a span of time in between.  Most of these are in her 30s.  Many of them did not receive any criminal history points.  They range from deadly conduct to possession of a controlled substance.  And on occasion she was revoked for not complying with her conditions and, in fact, was on supervision at the time she committed this offense.

Ms. Waddell is not remorseful for this offense. Your Honor, just in the days before trial, there was a jail call where she called Mr. Bloomer and tried to convince him to say things that were not true. I'm not sure if that was to induce him into not giving trial testimony, but she told him that he should say her business was an escorting business and not the business of selling Fentanyl pills, and trying to manipulate him to agree with her that she was not guilty of this and trying to manipulate that codefendant.

She exerted, Your Honor, a lot of manipulation and control over him during the offense, telling him where to go. The text messages between the two were horrible. We cut down those text messages to just ones that were relevant to the offense. But the screaming and the insults and the berating that happened in between was appalling, Your Honor.

Given, that, a sentence at 240 is appropriate, Your Honor. Although the guideline term of supervised release is three years, given her criminal history that is so recent, Your Honor, in her 30s -- she's 41 now -- with 20 adult convictions, we believe that the Court should

upwardly vary with regard to the term of supervised release and impose a term of at least five years.

THE COURT:  Thank you, Counsel.  The Court will give appropriate weight to the argument of the AUSA, and I will carry forward a motion for upward variance.

I'll invite argument from defense counsel, and you may respond to that motion for variance.

MR. BARFIELD:  Your Honor, I believe that three years' supervised release would be an appropriate amount of time.  Ms. -- based upon the Court's -- the 240 months, Ms. Waddell is going to be incarcerated for a significant amount of time.  And in that time -- and we will address issues later on in these proceedings about what she intends to do while she's incarcerated.  So I will wait until the appropriate time to bring that up.  So I will argue against an upward variance for the supervised release.

I would also not like to paint Blue Bloomer as a victim in this case.  He was a grown man who was just as responsible, has pled before this Court, to distribute Fentanyl on his own.  He was not manipulated by anyone or anything.  He made his own decisions, and he is not a sympathetic

character as the government would so portray. Therefore, I ask the Court to entirely disregard Blue Bloomer as being a victim of anything.

I would state that in regards to that variance for supervised release. That would be my argument against any longer period of time at this particular time, Your Honor.

THE COURT: Thank you, Counselor. I have your argument, and with that I will explain to defendant her right of allocution.

Ms. Waddell, you have an absolute right to allocute at this sentencing hearing. Allocution simply means you may tell the Court any information you think is relevant to the sentencing decisions. You may read aloud a prepared written statement. You can make arguments for the Court to consider. You can present facts you think the Court should weigh. You have an absolute right to allocute at this federal sentencing hearing, but you are under no obligation to do so, and you can never be forced to allocute.

Is there anything you could tell the Court at this time in the form of allocution?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You may take as much time as

you deem necessary.  You may do so seated or standing, whatever is most comfortable.

THE DEFENDANT:  Thank you for giving me a chance to speak, Your Honor.  I want to say that I do know that I'm here because of my actions and because of bad choices and poor decisions.  And I know that my actions have caused pain and humiliation for my family, loss in their lives and for anybody that was a victim of my crime.  It's caused destruction in their lives.  My actions of -- I just disregarded society and have been a menace.  And not only the -- how severe the charge is that I'm here on, but the severity of Fentanyl in our country.

And I -- I, after being in Randall for 11 months and some time sober and some time for reflection, I am filled with remorse and with regret and guilt for everything that has happened, and for my actions and the pain that they have caused others.  And I can only say that it was my addiction that was driving me.  Fentanyl had created a desperation in my life that was unparalleled that I can only plead with Your Honor for -- for mercy that that's not the person that I am or the woman I was raised to be.

But I -- I will accept whatever you decide for me today, and I will try to -- to take whatever programs I can and do whatever I can to better myself while I'm incarcerated and to be the best person that I can be when I get out. And that I have a willingness to -- to do whatever it takes to make this right for -- for this Court and for society and for my family, and that I could be a productive member of society again when I am released. And that I have family support, and I just -- that I can learn whatever I can while I'm there, and when I'm released, I can be productive again.

Thank you for letting me talk.

THE COURT: Ms. Waddell, as your attorney has explained, later in the sentencing hearing I will hear recommendation for your continued care, your education and your treatment. I know in reviewing your PSR there are myriad traumas that have been inflicted upon you throughout your life. Many of those have been unaddressed by their systems, by their terms of incarceration. I want to make certain that we make as many recommendations as possible to be sure that you receive the care and treatment that you deserve and much of this

unaddressed trauma is addressed in a helpful and professional way.

So if you need to discuss with Mr. Barfield any recommendations that you would prefer and that you would think helpful, I will order the microphones turned off for purposes of that attorney-client communication.  So please know that that, too, is part of the sentencing process. It will simply happen towards the end of the sentencing hearing.

THE DEFENDANT:  Thank you, Your Honor.

THE COURT:  And with that, does defense counsel know of any reason why this Court should not impose sentence at this time?

MR. BARFIELD:  I know of nothing, Your Honor.

THE COURT:  Anything that is a bar to sentence known to the government?

MS. BELL:  No, Your Honor.

THE COURT:  Having considered the permissible factors set forth at 18 U.S.C. Section 3553(a), the advisory sentencing guidelines, the conduct committed in the factual resume and all mitigating and aggravating factors and the capable assistance of defense counsel through the trial and

also the sentencing process, it is the judgment of this Court that the defendant, Rachel Lynn Waddell, is hereby committed to the custody of the Federal Bureau of Prisons for a period of 240 months.  This represents a term of incarceration at the advisory guidelines range.  The Court does not order a fine because defendant lacks the financial resources or future earning capacity to pay a fine.

The Court does order a one-time mandatory special assessment of $100, which is due and payable immediately.

The sentence shall run consecutively to sentences that may be imposed in Case Numbers 1665666 D, 1665668 D, pending in the 297th District Court of Tarrant County Texas; Case Number 31845-C, pending in the 251st District Court of Randall County, Texas; and Case Number 2023-0014-1, pending in the County Court at Law No. 1 of Randall County, Texas.

Because the aforementioned pending state and county cases are unrelated to the instant federal offense of conviction, this Court is following the default rule that unrelated cases should be run consecutively.

The Court does not order restitution,

because there are no identifiable victims other than society at large.  The Court denies the government's motion for upward variance regarding supervised release and instead orders a three-year term of supervised release upon release from imprisonment.

While on supervised release, defendant shall comply with the mandatory conditions listed at Section 3583(d) and Section 5D1.3(a) of the Guidelines Manual.  The standard conditions listed at Section 5D1.3(c) of the Guidelines Manual and the following discretionary special and additional conditions of supervised release derived from Sections 5D1.3(b), (d) and (e) of the Guidelines Manual.

Number one:  The defendant shall participate in an outpatient program approved by the probation officer for treatment of narcotic drug or alcohol dependency that will include testing for the detection of substance use, abstaining from the use of alcohol and all other intoxicants during and after completion of treatment and contributing to the costs of services rendered, copayment at the rate of at least $20 per month.

And Mr. Barfield, did you and your client received a timely copy of the written notice of

intent to impose conditions of supervised release?

MR. BARFIELD:  We did, Your Honor.

THE COURT:  Did you have a full and complete opportunity to review that document with your client?

MR. BARFIELD:  I did, Your Honor.

THE COURT:  Did you explain to your client the conditions of supervised release stated in the notice with particular attention to the discretionary special and additional conditions appearing on page 4 and pronounced aloud by the Court.

MR. BARFIELD:  We went over the document completely, and they were explained, Your Honor.

THE COURT:  Does your client have any objections to the conditions of supervised release stated in the notice and pronounced aloud at sentencing?

MR. BARFIELD:  Absolutely not.

THE COURT:  Ms. Waddell, do you agree to abide by and follow and adhere to the statements of supervised release as pronounced by this Court?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Ms. Bell, did the government receive timely copies of that notice?

MS. BELL:  Yes, Your Honor.

THE COURT:  Any objections to the conditions of supervised release stated in the notice and pronounced aloud at sentencing?

MS. BELL:  No objections.

THE COURT:  The Court did receive and did review a fully executed copy of the notice.  It is dated August 29, 2024.  It bears the signature of the defendant, defense counsel and this Court.  It is made a part of the record in this case and any case on appeal, and the conditions of supervised release stated herein are hereby adopted, ordered and imposed as just pronounced by the Court.

The Court will now state its reasons for imposing this particular sentence, and because the defendant's guidelines range exceeded 240 months, the Court will state its reasons for imposing sentence at a particular point within or at the advisory range.  This is a requirement of 18. U.S.C. Code, Section 3553(c)(1).

Here the sentence is sufficient but not greater than necessary to comply with the following 3553(a) factors and facts.

First:  Pursuant to Section 3553(a)(1), here the history and characteristics of the

defendant is extensive and began as early as 14 years of age.  As an adult, defendant's convictions revolve around illegal possession of controlled substances.  That history includes two convictions for possessions of marijuana, seven convictions for possession of controlled substances, two convictions for possession of heroin and at least one conviction for possession of methamphetamine.  This is reflected in multiple PSR paragraphs, specifically 55, 57, 58, 59, 61, 62, 65 and 67 through 70.

Defendant's criminal history shows that she continued in controlled substance use and, when given the opportunity, quote, failed to attend and complete a treatment program as required by terms of supervised release.  This is reflected in PSR Paragraph 61.

Additionally, defendant's adult criminal history includes four convictions for theft of property, two convictions for burglary of a motor vehicle, and one conviction for theft and one conviction for deadly conduct.  The Court considers this extensive criminal history aggravating in the extreme.

Next, pursuant to Section 3553(a)(2)(A), which requires the Court to consider the nature and

circumstances of the offense, the seriousness of

and to provide just punishment for that offense.

Here defendant trafficked at least 586.60 grams of Fentanyl into and through the Amarillo Division.  Importantly, the potency of Fentanyl presents an enormous danger to the public.

A January 2021 report from the United States Sentencing Commission states, quote: Fentanyl is approximately 30 times more potent than heroin and approximately 60 times more potent than morphine, resulting in increased potential for fatalities, particularly when the user is unaware they are using Fentanyl.

In addition to trafficking an enormous amount of Fentanyl into and through the Amarillo Division, the defendant also possessed a .45 caliber handgun in addition to drug paraphernalia.  That is reflected in PSR Paragraph 20.

As this Court noted in ruling on defendant's objections to the PSR, the 5th Circuit has repeatedly held that the combination of drugs and firearms is a deadly combination.  And all of these articles combined represent tools of the trade for drug traffickers.  This is a phrase used in *Zapata-Lara*, 615 F.3d 388.

The Court also finds the defendant's actual drug trafficking activity is underrepresented in the PSR.  Specifically the Court notes that the pictures from the PillEye app confirm that defendant possessed thousands of Fentanyl pills at her residence and distributed them.  As stated in the Court's ruling on defendant's objections, here the Court relies on Document Number 434 at pages 10 and 11.

Finally, the Court will note that when law enforcement initiated the traffic stop, she did not immediately stop and appeared to throw an object from the front passenger window.  This is reflected in PSR Paragraph 12.  Combined, the Court finds that the 3553(a)(2)(A) factors and facts are aggravating in the extreme in this case.

Pursuant to Section 3553(a)(2)(C), which requires the Court to promote respect for the law, to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant, here defendant's extensive criminal history revolves around controlled substance abuse and distribution of controlled substances.

The defendant has not been dissuaded by prior terms of incarceration, and the Court finds

that the defendant likely would have continued in her criminal enterprise except for the intervention of law enforcement.

The Court finds that the Section 3553(a)(2)(C) factor and facts are aggravating in the extreme in this case.

And though that weighting of factors and facts might warrant an upward variance on the supervised release terms, the Court denied that motion by the government for reason of several mitigating factors.

Here defendant's parents divorced when she was very young.  And multiple PSR paragraphs reflect that defendant was subjected to a series of abusive relationships and events.  Specifically the Court is referencing PSR Paragraphs 89, 90, 91, 92 and 93.

Additionally, as an adult, defendant was further abused by Codefendant Bloomer during their six-year relationship.  Defendant's recent addiction to narcotics began at age 29 after being prescribed narcotics following a car incident injury.

The Court discerns that the defendant's tragic trajectory is rooted in a series of traumatic events, many beyond defendant's control.  For that reason, the Court did not upwardly vary to a

five-year term of supervised release.  And the Court further intends to make as many recommendations as possible to provide for defendant's care and treatment, much of this trauma having been left unaddressed for most of defendant's life.

On supervised release, the Court did impose that three-year term as an added measure of deterrence and protection.  In light of the 5th Circuit's opinion in *Diggles*, the Court adopted and imposed an order of discretionary conditions of supervised release because they are consistent with Section 3583(d)(1), (d)(2) and (d)(3).  And the Court expressly states that the discretionary conditions of supervised release involve no greater deprivation of liberty than is reasonable and necessary as required by 3553(a)(2)(B), (a)(2)(C) and (a)(2)(D).

The Court has now stated its sentence and reasons therefore.

Does the defendant have any objections to the statement of sentence?

MR. BARFIELD:  No, Your Honor.

THE COURT:  Any objections from the government?

MS. BELL:  No, Your Honor.

THE COURT:  The Court hereby orders the sentence imposed as stated.

Finally and emphatically, even if the correct advisory guideline range was not considered and the defendant should have prevailed on her objections to relevant PSR paragraphs, this Court would have imposed the exact same sentence for the exact same reasons given during the sentencing hearing regardless and irrespective of the applicable guidelines range.

Even had defendant prevailed on your objections affecting the calculation of that guidelines range culminating in a lesser advisory guidelines range, this Court would have used the tool of upward variance to arrive at the exact same sentence for the exact same reasons, 20 years' imprisonment followed by a three-year term of supervised release.

Additionally, this court presided over the pretrial conference, trial and sentencing hearing and was well-acquainted with the relevant facts, evidence, testimony, exhibits and jurisprudence necessary to balance the 3553 factors and facts that apply at sentencing.

And for reasons of all of that exposure

and experience with the case and defendant, this Court arrived at the result imposed, 20 years' imprisonment followed by a three-year term of supervised release.

Now, Mr. Barfield, as I promised the defendant, I want to make very particularized recommendations to the BOP to address the traumas and the substance abuse that's reflected in the PSR, specifically to medical care.

PSR Paragraph 97 reflects defendant has suffered two seizures.  She's also been diagnosed with hypertension.

Are there any medical evaluations or recommendations you would request?

MR. BARFIELD:  I would just request that the standard medical evaluations be done at whatever facility.  I believe currently -- you're not really taking medications.

THE DEFENDANT:  Just for high blood pressure, and I take Meloxicam.

MR. BARFIELD:  And I think most FCI facilities would be able to take care of the physical/medical issues that my client currently has.

THE COURT:  Is there a specific drug

regimen that should be noted and continued for defendant's seizures and then hypertension?

MR. BARFIELD:  She takes Lisinopril and Meloxicam, Your Honor, for her medical conditions.

THE COURT:  Okay.  And regarding substance abuse treatment, obviously controlled substances and drug addiction have plagued defendant for much of her life, as reflected throughout the PSR.

I would -- I would impose the residential -- or I would recommend the Residential Drug Abuse Program if I thought she could qualify or be rendered eligible.

Is there a specific phraseology that you would request?  The most intensive substance abuse treatment and drug rehabilitation deemed consistent with her security classification?

MR. BARFIELD:  I would -- I think that terminology would work perfectly, Your Honor.  And we are requesting the RDAP program and any more intensive program that's available to her to make sure that this addiction is taken care of once and for all.

THE COURT:  Okay.  And as I referenced as mitigating factors in this statement of reasons, there is extensive personal and relational trauma

that began as early as 1992.  It runs through PSR Paragraphs 89 through 93.

Are you requesting any mental health treatment?

MR. BARFIELD:  I'm requesting that after mental health evaluation that any type of either domestic abuse victim counseling or any type of individual counseling to address any untreated trauma occur if that is indeed possible, Your Honor.

THE COURT:  Sometimes defendants who have struggled with controlled substances object to a recommendation for mental health prescriptions.

Is there any objection to such a recommendation?

MR. BARFIELD:  No, Your Honor.

THE COURT:  Let's lump all three together, Ms. Bell.  Any objection to the medical counseling or drug rehabilitation recommendations?

MS. BELL:  No objections.

THE COURT:  This Court emphatically recommends that the defendant be allowed to participate in a full mental health evaluation to address the traumas reflected in PSR Paragraphs 89 through 93, specifically any counseling available for victims of domestic abuse and also any mental

health prescriptions if monitored and prescribed by a licensed medical professional, M.D. or Ph.D.

The Court recommends that the defendant be allowed to participate in a full medical evaluation and be considered for possible placement initially at FMC, and that she be allowed to continue the two medications treating the conditions referenced in PSR Paragraph 97.

This Court recommends emphatically that the defendant be allowed to participate in the most intensive drug rehabilitation and substance abuse treatment deemed consistent with her security class in this action and eligibility, if possible, to the Residential Drug Abuse Program or an equivalent residential drug abuse program if it is ever consistent with her classification and eligibility.

Now, vocational training, PSR Paragraph 16, reported an interest in office or clerical work, finance and computer systems and accounting.

Is this the sum and substance of your requested recommendation on training?

MR. BARFIELD:  It is, Your Honor.

THE COURT:  Any objection, Ms. Bell?

MS. BELL:  No, Your Honor.

THE COURT:  Consistent with PSR Paragraph 16, the Court does recommend that the defendant be allowed to participate in vocational training and continued education in clerical work, finance, computer office systems, and accounting. And the Court finds that the defendant is an excellent candidate for continued vocational training given her manifest intelligence and facility with business style systems.

Now, regarding residential placement, I know this case involved Amarillo Division persons who were helpful and hurtful.

Are you prioritizing proximity to programs or proximity to family and friends?

MR. BARFIELD:  Well, kind of a combination of both, Your Honor.  I think FMC Carswell in Fort Worth might be the optimum facility that we might request given what we're dealing with here, if not El Reno.  I think as the Court has said in the previous hearing today, I think El Reno has plenty of programs as well.

THE COURT:  Any objection, Ms. Bell?

MS. BELL:  No objection, Your Honor.

THE COURT:  If defendant qualifies, this Court recommends FMC Carswell in the Fort Worth

Division, in the alternative FCI El Reno.  And the Court agrees with defense counsel, that either facility would allow defendant relative proximity to family and also access to the programs recommended by this Court or equivalent programs.

Now, Ms. Waddell, if you decide to appeal, your notice of appeal must be filed with this Court within 14 days of the date judgment is entered or within 14 days of the government entering its notice of appeal.

Also, importantly, if you decide to pursue that appeal, you have an absolute right to apply for leave to appeal in forma pauperis.  This is sometimes abbreviated IFP.  If IFP status is granted, you may be able to pursue an appeal for free rather than at the costs of the government.

Mr. Barfield, did you and your client receive a timely copy on the notice of right to appeal?

MR. BARFIELD:  We did, Your Honor.

THE COURT:  Did you have full and complete opportunity to review that notice with your client?

MR. BARFIELD:  I did, Your Honor.

THE COURT:  Did you specifically explain the 14-day period that applies to the notice of

appeal?

MR. BARFIELD:  Yes, Your Honor.

THE COURT:  And does your client have any objections to the appellate rights described in this written notice and described at the sentencing hearing?

MR. BARFIELD:  She does not.

THE COURT:  And Ms. Bell, did the government receive a timely copy of that notice?

MS. BELL:  Yes, Your Honor.

THE COURT:  Any objections to the appellate rights described in the notice or described in the hearing?

MS. BELL:  No objections.

THE COURT:  The Court did receive and did review a fully executed copy of the notice of right to appeal, and it is signed by defendant, defense counsel and this Court.  It is made a part of the record in this case and any record on appeal.

And I'll caution you, Ms. Waddell, this notice of right to appeal has a title strangely similar to the notice of appeal, but they are very different documents with very different effects.  If you have questions about the notice of appeal and the 14-day period that applies, please consult with

counsel and he can explain the deadlines and deliverables.

Anything else from the government?

MS. BELL:  No, Your Honor.

THE COURT:  Anything else from the defendant?

MS. BELL:  No, Your Honor.  Thank you for the Court's time.

THE COURT:  Okay.  And, Ms. Waddell, I do want to afford you a very brief moment to speak with the family that's assembled in the gallery.  They have endured multiple hearings and more federal sentencing law than they ever cared to learn.

I want to give you an opportunity to speak with those people assembled.  Please follow the instruction of the Marshals.  Remain on this side of the gallery bar at all times.  And the same instruction applies to those family members assembled in the gallery.  Please remain on that side of the bar.

The Marshals and the CSOs are here for your protection.

The Court stands adjourned.  Counsel are excused.

Ms. Waddell, you are remanded to the

SHAWNIE ARCHULETA, CSR/CRR
FEDERAL COURT REPORTER - 214.753.2747
shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com

custody of the United States Marshal.

We are adjourned, and the Court will reconvene at 4:00 for the next hearing scheduled.

(Court in recess at 3:52 p.m.)

C E R T I F I C A T E

I, Shawnie Archuleta, CCR/CRR, certify that the foregoing is a transcript from the record of the proceedings in the foregoing entitled matter.

I further certify that the transcript fees format comply with those prescribed by the Court and the Judicial Conference of the United States.

This 5th day of November 2024.


s/Shawnie Archuleta
Shawnie Archuleta CCR No. 7533
Official Court Reporter
The Northern District of Texas
Dallas Division


My CSR license expires:  December 31, 2024

Business address:  1100 Commerce Street
                   Dallas, TX  75242
Telephone Number:  214.753.2747